Good morning. May it please the Court, Jonathan Libby appearing on behalf of Appellants Jerron Johns and Kelvin Owens. I'll be taking 10 minutes of the 15 minutes allotted. Mr. Newman, who's representing Appellant Lyndon Baptist, will be taking 5 minutes. Your Honors, the sensing disparity for powder and crack cocaine is arbitrary, has no pharmacological basis, and invidiously discriminates against blacks and other minorities in violation of due process and equal protection. These are all statements that were made by members of Congress when they passed the Fair Sentencing Act of 2010. Although I would like to focus this morning on the retroactivity of the Fair Sentencing Act, I would like to briefly address the due process and equal protection arguments presented by both Mr. Johns and Mr. Owens. Judge Calabresi in United States v. Then, which we cite to in our brief, noted that if Congress, though it were made aware of both the dramatically disparate impact amongst minority groups of enhanced crack penalties and were nevertheless to act affirmatively to allow the disparity to persist, subsequent equal protection challenges based on claims of discriminatory purpose might well lie, and such challenges would not be precluded by prior holdings that Congress had not originally acted with discriminatory intent. Mr. Owens. Well, what did Judge Calabresi do? Well, in that case, it was not an issue. This was back in 1995, and the panel was very wise. He had one of these cases. Beg your pardon? He had one of the cases on the Fair Sentencing Act and its retroactivity. He did, more recently in Acoff. And he determined he was bound by circuit precedents. A panel prior to the Acoff decision had already ruled that the law was not retroactive and that equal protection was not violated, and so he felt he was bound by that. Though he then issued a separate concurring opinion where he essentially reiterated what he had said in United States v. Then. What we do know from the Fair Sentencing Act is that Congress, rather than eliminating the disparity, simply reduced it. So the disparity continues even under the new law. 18 to 1 is not 1 to 1. That would suggest that the Fair Sentencing Act may, in fact, violate equal protection. The 18 to 1 apparently is, again, completely arbitrary. We have no basis for it whatsoever. And it does suggest that when the 1986 law was passed, that Congress, in fact, was acting with discriminatory intent. And with that, I'll turn to the retroactivity issue, unless the Court has additional questions on equal protection. With respect to retroactivity, unlike other statutes in which Congress has expressly stated that it intended for the old law to continue to apply to dependent cases, Congress included no such saving provision in the Fair Sentencing Act. Rather, Congress expressly removed a provision from one of the bills that was before it that had included a provision that said the law was not retroactive. And instead included language in the law that would indicate that it had the intent to immediately end the discriminatory impact of the law. What do we do about, I mean, which we've been thinking about for a while, the elephant in the room of Section 109 that all the other cases have relied on to say that the FSA is not retroactive? Well, certainly we concede every other circuit court to have addressed the argument and has rejected it. We would submit that when you actually look at each of those cases, the decision only addressed whether Congress expressly indicated that the new law applied to defendants already sentenced and determined that because Congress did not expressly indicate anything, that the general savings statute, Section 109, applied. The courts did not look to what the Supreme Court has said, is that courts may look to such as it may be implied where it's essential to prevent absurd results or consequences obviously at variance with the policy of the enactment as a whole. The Supreme Court said that in United States v. Rutherford. And all of this has to be viewed against the backdrop that the Supreme Court talked about in Ham, in which it noted that in that case it gave force to the general principle that imputes to Congress an intention to avoid inflicting punishment at a time when it can no longer further any valid legislative purpose. So the Supreme Court has on multiple occasions said you have to look to the totality of what Congress intended in passing the law. The fact that it did not include a saving provision does not automatically mean that the general savings clause applies. And with that, I will actually reserve the balance and turn it over to Mr. Newman unless the Court has additional questions. Thank you, Counsel. Good morning, Your Honors. I don't have too much to add to what my colleague has stated. I was joined in his comments. However, I would like to note that in the transcript that was submitted on behalf of Mr. Baptiste, you can feel the pain in which Judge Whaley from Washington felt in having to sentence my client, Mr. Baptiste, to a mandatory five-year sentence for the very peripheral role that he played in the offense. I mean, he really suffered for this. And in the 30 years that I've been doing this, this is the first time I've ever had a judge who went to the extent that Judge Whaley did in almost 40 minutes of a basically lecture as to the unfairity of what he had to do. Historically, we've always believed that a sentence had not been finalized until an appeal had been finished, and the Supreme Court said that in U.S. v. Johnson, cited in our brief. And historically, in our case, that's the circumstances. The Fair Sentencing Act had not been enacted during the course of the underlying case when Mr. Baptiste was sentenced, but at the time when we did file the appeal, as the Court probably will note in the file, that we originally had filed an Anders brief because Judge Whaley had almost ordered me to file an appeal because he felt so strongly about this case. And then, of course, when the new law came down, we had actually had an issue to raise, and then we refiled a new brief. But I believe that if this case had been on appeal and there had been a judicial decision issued by the Supreme Court, then we would be free to apply that new law because the case was not yet final, right? Correct, Your Honor. And so courts have distinguished an act of Congress from a judicial decision by saying that does not apply unless Congress expressly indicated that it would. That's correct, Your Honor. But as my colleague said, the Congress clearly did not specifically preclude it, and, therefore, I believe that the judicial history of the non-closing of a case or non-conclusion of a case does not result in a judicial decision. And that's also the finding of the termination of an appeal. And without any further questions... Now, we have a copy of the letter that Senator Leahy and Senator Durbin sent to the Justice Department, and in it, they urged that where the individual has not yet been sentenced, that they should be applying the new law. It didn't say when the sentence is final, but it's applicable to those who have not yet been sentenced, which is fairly strong evidence of what Congress intended because these were the senators who pushed the bill. Your Honor, that would be even more important to Mr. Baptiste in that the tick of a clock or the turning of a page of a calendar would be so detrimental to his – what sentence he would get. Judge Wiley did not say what sentence he would get, although he did certainly infer that it would be significantly less than the five years that he did give him, the 16 months. And so the fact that with a sentence pending – another example, I know it's not really on the record, but his co-defendant who was a fugitive, would the new law apply to his co-defendant who was a fugitive and was arrested afterwards when the new law was in effect? Would the new law affect the co-defendant because he had, you know, absconded and was gone? So I think Judge Wiley was very, very concerned about the injustice of what he was doing. You know, almost every judge who handles these cases has been concerned about the injustice of it. District judges, even before the Fair Sentencing Act, felt that these mandatory minimum sentences were not an appropriate way to administer justice. But they were not able to do anything about it. And if Congress passed a law specifically that said, this shall not apply to any case where the crime was committed before the passage of the Act, that would have been the law. And there's no question that it might well have been or would have been unfair and would have been discriminatory. But still, courts are not allowed to do anything about it. And if you read the law the way every other judge who has considered it has read it, this statute has that same effect. Well, Your Honor, I think that the court also has to weigh the equities. I wish we could weigh equities. You know, we get a number of cases where we are required to do things that are unfair and unfair and unfair. And inequitable. And it sometimes makes you wonder if this is what you really want to be doing or out on the street protesting. But as long as you're a judge, you are required to follow the law. And some of our laws are very unfair. I understand that, Your Honor. But I think there are some openings in the law that would allow Your Honors to find that this law as appropriate. And I would advise at least to Mr. Baptiste that where he did have an appeal and does have an appeal pending would be applicable to him, Your Honor. And I would like to reserve the balance. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Mark Yohalam on behalf of the United States. I'll be taking the first seven minutes to talk about the constitutional issues and about the Johns case. My colleague, Mr. Andre, will be taking the remaining eight minutes to talk about the Owens and Baptiste cases. Your Honors, in this case... Are the issues any different in Johns and Owens and Baptiste? They are, Your Honor. Owens and Baptiste present an issue of whether the FSA is retroactive. The Johns case does not present that issue at all. Defendant did not argue that the FSA applied to him retroactively, and even if it did, he would have received the same sentence under the FSA, given the quantity of crack that he was dealing. Similarly, there are some case-specific issues, one of which was what I wanted to start with, which is the waiver issue in the Johns case. And here, a defendant in the district court argued that a 240-month sentence was the appropriate sentence for the Johnson case. He argued that he received that sentence in light of all the pertinent factors in consideration, and in support of that, he cited the Supreme Court's decision in Kimbrough and the 100-to-1 disparity between crack and powder cocaine. Five days after he received the 240-month sentence he asked for, he filed a notice of appeal. Now, before this Court, he says the 240-month sentence is unconstitutional. In support of that argument, he cites the Supreme Court's decision in Kimbrough and the 100-to-1 crack-powder disparity. Now, that is a sort of quintessential waiver situation. A litigant cannot request something from the district court, believing that it is unconstitutional, knowing his arguments for why it is unconstitutional. And then when he gets the benefit he wants in the district court, whipsaw the district court by asserting that what the district court did is unconstitutional on appeal. But didn't he not – I mean, your waiver argument is based on the fact that he didn't raise the Fair Sentencing Act in the district court, but the Fair Sentencing Act hadn't been passed at that time. Your Honor, it's based on the fact that he didn't raise the constitutionality of his sentence in the district court. Not that he didn't raise the FSA. Even on appeal, he doesn't argue that the FSA is retroactive. His arguments on appeal are that his sentence is unconstitutional under the cruel and unusual punishment clause, under the Fifth Amendment, or under equal protection. Obviously, all of those constitutional rights existed at the time of his sentencing. He was obviously well aware that there were constitutional claims he could have made, because literally five days after receiving that sentence, he filed his notice of appeal. Under his plea agreement, the only claims he could assert on appeal were constitutional claims. So to me, that is strong evidence that he basically was holding in his pocket constitutional claims that he didn't want to assert below, because he wanted to get the benefits of a plea agreement where he recommended a 240-month sentence. Wanted to turn around and attack the very sentence he had recommended. I recognize that the FSA's passage is an intervening event between the two. But because he's not pressing any rights created by the FSA, I don't see how that could undo or make unknowing the waiver of his constitutional rights below. So that's sort of the main unique issue to Johns. The constitutional issues are present in all the cases. And there, my opponent doesn't discuss the Ninth Circuit's three most recent cases, the Johnson case that we cited in our 28J letter, the Hall case that we cited in an earlier 28J letter, and the Hampton case that we cited in our brief. All of those cases are either post-Kimbrough or, in the case of Johnson and Hall, post-FSA. And all of them have reaffirmed this Court's earlier precedence, rejecting constitutional challenges to the Kraft sentencing laws. Now, my opponent talks about Judge Talbrazy's idea that when Congress reenacts a law indifferently to a disparate impact, maybe that could create a new constitutional claim. But defendant wasn't sentenced under the FSA. It may be, although the government would argue that FSA-based claims are also foreclosed, but maybe a defendant who was sentenced under the FSA could make the kind of Judge Talbrazy argument. But here, defendant was sentenced under the very same law that was upheld in Hoyt, Van Wynrode, Dumas, Harding, Malone, Johnson, Hall, and Hampton. And there's nothing that undermines that long and unbroken line of authority from this Court. So, you know, I think as a matter of precedent, his claims are foreclosed. I think even if those precedents weren't on the books, his claims would fare no better. His cruel and unusual punishment claim is particularly weak given the horrendous facts of his criminal history. Can you explain to me your statement that even if he had been sentenced under the FSA, it would have been the same 20-year mandatory minimum? The quantity of crack cocaine that he dealt triggers the same mandatory minimum under the FSA. That is, he wasn't one of these defendants who was right at the borderline of what would have triggered a base 10-year mandatory minimum. It was half a kilo of crack cocaine. And then the 10 years becomes 20 years in light of his prior drug-trafficking offenses. So that's, it was the prior conviction that raised it up to 20 years? Under both the old law and the new law, it's the combination of the quantity and the prior conviction. And I note he actually has two prior drug-trafficking convictions, and so he would have been susceptible to a mandatory life imprisonment. The government dismissed, in the interest of justice, one of those two prior convictions, thus reducing the mandatory minimum. He was facing from life to 20 years. His cruel and unusual claim, I think, would fail even under, if there weren't precedents in the light of, you know, as an as-applied standard, it would fail because of his serious crime and serious criminal history. As a sort of facial challenge to it, it would fail given that 20 years is not facially so disproportionate or so outrageous in the way of life imprisonment without parole for a minor, which is the only non-capital situation where the Supreme Court has held a punishment facially unconstitutional. And his equal protection argument would fail because there's still, the defendant has identified no evidence that Congress acted with discriminatory intent. He has mustered evidence of disparate impact from the law, but this Court has said there has to be a showing of discriminatory intent as well. And as for the special assessment issue, I think that's covered in the case. Thank you, Your Honor. Before you step down, looking at this letter that Senator Ley and Durbin sent to Attorney General Holder, urging fairness, I would assume that you have had discussions in the department as to whether your position on these people whose sentences are not subject to the law. I mean, if they're not final, whether they should be treated with fairness or whether they should stick to the old rules that you're arguing for? Yes, Your Honor. I think it's accurate to say with every defendant, treating the defendants with fairness and with justice is the department's objective. I think with respect to this particular defendant, both the facts of the case would motivate the department to stand by the mandatory minimum, and the facts of the case would motivate the department to stand by the mandatory minimum. But even if we were to apply the FSA to this defendant, he would be no better off. So with respect to Johns, I don't think the letter has any application. I think it was a general question. I'd like to follow up on that general question. Has the department taken a position on whether individuals who have not been sentenced as of the time of the passage of the Act should be sentenced still under the old law? I know that there is a case-by-case analysis that turns on not just the timing of when the defendant is sentenced, also the nature of the offense, the defendant's criminal history, the nature of whatever... You're saying some people who are being sentenced after the passage of the law are being sentenced under the old law, and some are being sentenced under the new law? Yes, Your Honor. So it's not a question of what the law requires. It's a question of what's just and fair? I think the department makes charging decisions all the time where the department's not obligated to charge a defendant with every crime a defendant can be charged with. For classically, in the 851 case, as in this Johns case before the court now, the government dismissed one of the 851s against Mr. Johns so that he wouldn't face a life term of imprisonment. That's one of the ways that the department has always... I know you can do it with your charging. You can bring somebody under the terms of the old law or the new law by the amount of the drug you charge. That's right, Your Honor. That's different from saying that when you charge somebody with the offense, that you say in some cases he can be sentenced under the new law, and in others he can be sentenced under the old law. That was my question. I don't believe the department has ever taken the position that a defendant should be sentenced under the new law retroactively. Rather, what's been done in some cases is that the indictment has been superseded with an information. This information removes the quantity from the fact, the charge, and the indictment, which thus eliminates the application of a mandatory minimum so that a defendant can be sentenced below the mandatory minimum. So it's not that the department goes into a court and says, you can apply the FSA retroactively. Rather, by changing the charging instrument, the government gives the district court the opportunity not to apply a minimum. So the question I really had, and you may have given the answer, is that if, pursuant to the charge, the defendant would receive a higher mandatory minimum, under the old law, but not under the new law, that even in the case of a defendant who has not been sentenced, he will be given the old law if the act was committed prior to the passage of the act. Yes, and the only way that anything ever happens differently is changing the charging instrument. But to my knowledge, the office's position is consistently that the FSA should apply retroactively. Even to persons who have not yet been sentenced? Yes. Because the only judge who has applied it differently than the fellow circuit judges is the district judge who distinguished between the time of sentencing and the time of an appeal. Yes. You have not accepted that distinction? No, Your Honor. And I can say, actually, personally, I just was involved in the sentencing of a defendant who was sentenced three weeks ago. It was actually the subject of a 28-J letter in, I believe, the Owens case, where the defendant was sentenced post-FSA, and the government did argue that the mandatory minimum under the old law should apply. You argued? What did the district say? The district court did so, and, in fact, realized he had been mistaken when he had previously applied the FSA retroactively in that very context. So, and I've now eaten quite a bit into my colleagues' time. We'll have to give them a little more. Wait a second. According to counsel in the Owens case, 78 percent of the district court decisions available on West's law that have addressed that very question have held that the FSA should apply to defendants who had not yet been sentenced at the time the FSA was applied. We're not talking about one or two judges here. We're talking about 46 district court opinions, and 36 out of 46 have said that have applied it retroactively where the defendant was convicted before the FSA but was not sentenced until after the FSA. Two answers to that, Your Honor. One is that... ...and the other is that West's law does not apply retroactively. It is, my understanding is that it is true, but incomplete. It's incomplete because West's law doesn't carry every opinion, every decision of every district court judge. Private litigants and the defense bar has been fairly aggressive in getting West's law to include every time a district court applies the FSA retroactively. The government hasn't done so in every case where a district court does not apply the FSA retroactively. So, for example, in my case that I was just describing in the court, we didn't ask the judge in that case to file something on West's law. We didn't ask West's law to file something. And so my understanding, although I think Mr. Andre is more learned here than I am, is that there have been over a hundred decisions where the FSA has not been applied retroactively. That are simply not on West's law. The other thing I would just say is that, again, none of the defendants before the court today were sentenced post-FSA. And so even if that issue were something relevant for the court to consider in a later case that might arise, none of these defendants are in that posture. All of them were sentenced pre-FSA. And Johns is not even arguing that the FSA applies retroactively to him.  He's arguing that the FSA applies retroactively to the defendants before the FSA was passed. And so, you know, even if the court were to follow the District of Maine, the distinction would not benefit the defendants here. All right. So what are the district courts doing, given that the sentencing guidelines have now been changed to reflect the FSA enactments, yet the government is taking the position that if the government chooses to charge in such a manner that the pre-FSA law applies, how are they reacting to that? Well, I would note for the court that there actually was that kind of a friction already. The guidelines had gone to a 30-to-1 ratio, even while the mandatory minimums were based on a 100-to-1 ratio. And so even now, you know, that sort of discrepancy between how the guidelines work and how the mandatory minimums work existed before the passage of the FSA. And district courts dealt with it by basically, you know, treating the mandatory minimums and statutory maximums as sort of the two far extremes of where a sentence could go, but using the guidelines for placing a defendant within that range. For example, Defendant Johns, his guideline range was actually far above the mandatory minimum. And so, you know, it's not always the case, I believe even post-FSA, that a defendant will have a mandatory minimum that exceeds the guidelines range. Even if you apply the old mandatory minimum and the new guidelines range, you might have a defendant where his guideline range was above the mandatory minimum. In a case where the guideline range is below the mandatory minimum, I think a district court would just have to apply the mandatory minimum. The statute trumps the guidelines. And that makes perfect sense, because the guidelines aren't mandatory anyway. A district court could go below them under Booker, and so it would be odd to say that, you know, the guidelines would permit a court to go below a statutory minimum, but Booker wouldn't. But this court has held that Booker doesn't permit a court to ignore statutory mandatory minimums. And so for the same reason, you know, the guidelines wouldn't either. And I believe there's actually a specific guidelines provision, although I don't know the number off the top of my head, that says where the mandatory minimum is higher than the guidelines range, then the guidelines range just becomes the mandatory minimum. Good morning. Jean-Claude André on behalf of the United States. And I will do my best to be brief in light of the time. We'll give you a lot of time. Thank you, Your Honor. I appreciate that. I'll be focusing on the Owens case and the Baptiste case, and in particular I'd like to start with the Owens case. The only proper disposition for the Owens case is dismissal of it across the board. Defendants' claims on appeal fit into two boxes. One is his statutory claim based on the FSA. That is, his claim that the FSA applies retroactively to him. And the other box in which his claims fit are the constitutional claims that Mr. Yohalam has already addressed. Unless there are questions from the Court about those constitutional claims, I'll leave the merits to Mr. Yohalam's discussion. Taking the first box, the FSA-based claim, that is a statutory claim, and as this Court held in United States v. Johnson out of 1995, we submitted that case in a Pratt 28-J letter yesterday, a defendant can waive his right to assert a claim based on a newly enacted law, even if that law would have allowed him to get a lower sentence or be subject to no mandatory minimum or a lower mandatory minimum. In light of Johnson, I think clearly defendants' FSA-based claim needs to be dismissed. Defendants' constitutional claims also should be dismissed, because once this Court decides that they're foreclosed by precedence, therefore meritless, then the proper disposition is dismissal, not affirmance of the sentence. And that's because both the appeal waiver and this Court's constitutional exception cases, like Bibler, Watson, what they say is a defendant can appeal an actually unconstitutional sentence, but he can't just raise a meritless constitutional claim to get around his appeal waiver, nor could he dress up in constitutional garb a nonconstitutional claim. So again, assuming that the Court follows its long line of precedence, rejecting the Eighth Amendment and equal protection challenges to crack mandatory minimums, that means that his sentence is not unconstitutional, and the appeal waiver comes down on him. And then, I think I've covered both boxes there, the proper remedy or proper disposition of the Owens case is dismissal across the board. Turning to the actual, I guess, substantive Fair Sentencing Act arguments raised by Mr. Libby and Mr. Newman, I think the easiest one to clear away at the outset is Mr. Newman's argument that because Mr. Baptist is pending on appeal, he should get the benefit of the statute. Judge Warlock, you were dead on when you said that courts are distinguished between legislative changes and judicial changes. Griffith v. Kentucky, the lead Supreme Court case in that context, spoke directly to this issue. In particular, in pages 322 and 323, the Supreme Court made plain that the rule that it was crafting, in particular, the rule that a defendant gets the benefit of a favorable change in law when he's pending on appeal, only applies to court decisions because of the potential randomness that the defendant in the lead case might get a favorable decision, but that other cases that are pending behind him would not. But the court made plain, particularly on page 323, that when the court creates a new rule, it is different from when the legislature does so. So as a result, fair or not, or fair or unfair, it doesn't matter under Johnson and Griffith v. Kentucky that Mr. Baptist is pending on appeal. The second point, Mr. Libby pointed out or criticized the nine other circuits that have addressed the retroactivity of the FSA, and he criticized those courts because they applied the expressly stated or expressly indicated test from the Savings Clause. Of course, that is what the Savings Clause says. Section 109 says that in order for a new statute to extinguish a penalty of an old statute, it must so expressly provide. Those other circuits applied the proper test. The necessary implication test that Judge Hornby relied on and that Mr. Libby favors is simply inapplicable here. That's plain from the Great Northern Railway case and also from Warden v. Marrero. In particular, in those two cases, the Supreme Court looked to the necessary implication of the statute because those two, the two new laws at issue in those cases had their own Savings Clauses. And so what the Court was trying to figure out is how do we reconcile these dueling Savings Clauses? The one in Section 109, which is incorporated into every subsequent enactment, and then the new mini Savings Clause in the new statutes. And they said there we can look, take a more holistic approach and look at what the necessary implication of the new law is. Here, as everybody's conceded, the FSA is utterly silent as to retroactivity. It has no internal, it has no dueling Savings Clause. As a result, we don't get into the necessary implication test. We just apply the expressly indicated test. And because there's no express indication, we really should be done. And that's why I think all the other nine circuits that have addressed this issue have dispensed with this issue so quickly. And of course, Judge Reinhart, when you mentioned to Mr. Libby that this statute effectively operates the same as one that had been enacted, you were correct. And that is because as Warden V. Moreiro makes plain, Bradley, the Supreme Court decision makes plain, and Great Northern, the Savings Clause is incorporated into every subsequent enactment. And so it doesn't matter that Congress didn't say not retroactive here or retroactive here. It doesn't matter that Congress didn't say not retroactive here because the  falls right into it. The last point I'd like to address, unless the Court has questions, is Mr. Libby's reliance on the Ham case and his suggestion that applying the FSA in the manner urged by the government in these cases would somehow frustrate Congress's purpose. Ham and another similar case in the Supreme Court called Chambers, they did discuss the concern that too rigid of an application of a statute might frustrate legislative purpose. But this Court has spoken to those two precedents, to Ham and Chambers. And it did so in a case called Vandenberg, and that's a 5F 3rd 439. What Vandenberg says, there are certain congressional repeals or amendments where it's just so clear that Congress intended to not just extinguish a penalty or to not just make something no longer criminal, but to actually confer a substantive right on the former defendant that there we can go ahead and give retroactive effect. That's how Vandenberg characterized the situations in Ham and Chambers. Those situations being the criminalization of sit-ins in the South and violations of the Volstead Act. And so basically what the Court said in Vandenberg is clearly when the courts or Congress recognize that people do have a right to engage in peaceful protest against discrimination and that when the 21st Amendment was passed and it effectively took the constitutional underpinnings out from under the Volstead Act that it doesn't matter that the repealing legislation in those two scenarios did not have a retroactivity clause because clearly you just can't reconcile that with the congressional intent of those statutes. Again, that's the analysis from Vandenberg and I think it limits Ham and Chambers in such a way that they just have no applicability here where Congress has said nothing about retroactivity and we have to default to Section 109 in the Savings Clause. I don't know if the Court has any questions for me. Do you know if Attorney General Holder responded to the Durbin-Lahey letter? I don't know for a fact. I certainly haven't seen it and I've been living crack sentencing issues since August, but I haven't seen it anywhere. But I don't know definitively. I presume he did because it would be the polite thing to do, but I don't know. If there's any further questions, I'll take them. Thank you. Thank you, counsel. Your Honor, to address a few points. First off, I would suggest another way of looking at this, and again, I'm turning to Judge Calabresi, who's a very smart man, who in his concurrence  said that there was no unconstitutionality. Well, I didn't solve the unconstitutionality problem by changing the ratio. It's the same unconstitutionality problem under the FSA that it was before. Yes, but Congress was, in fact, responding to the suggestion, and so... Well, if you want to say they were responding to the suggestion of unconstitutionality, they then rejected it because they still kept an unfair ratio. Well, I would agree that it is still unconstitutional. I don't think... Well, that's how Congress responded to a claim that disparate treatment was unconstitutional. They responded by giving more disparate treatment, not greater, but enacting another statute which also gave disparate treatment. I agree, though it was Congress's response. It perhaps was not a good response, but it was Congress's response, and so I would suggest that... Well, even Congress understood this was totally unfair. They didn't eliminate the unfairness. They just reduced the unfairness. Correct, but in terms of the retroactivity issue, as Judge Calabresi was suggesting, the starting point should be to assume if Congress is passing a law in response to the suggestion that you can assume that the law should be... It's a nice professorial thought by Dean Calabresi. I appreciate that, Your Honor. In terms of whether or not the distinction between sentencing post-FSA or sentence pre-FSA and should there really be a distinction, I would suggest that if you agree that the general savings statute does not apply, if we meet that burden, then the traditional normal rule of abatement would then apply, and under the normal rule of abatement, it does apply to cases pending on appeal. Okay. All right. You have 30 seconds. Okay. I would also suggest the rule of lenity also might work in our favor. In terms of the government has suggested that we, in Owens, that we waived our right to appeal, I would suggest that the appeal waiver is not enforceable here because the courts failed the Rule 11 colloquy. If you go back and look at the Rule 11 colloquy, which is on page 62 of the excerpts, the entire discussion of the appeal waiver is simply addressing to the defendant, also there's a question, if you understand that, answer yes, sir. That's it. There was no discussion whatsoever by the government in terms of what the provision said or anything like that, so the court simply failed the Rule 11 requirements to confirm that he was aware of the appeal waiver. So we would submit it doesn't apply. Thank you, counsel. Cases that argued will be submitted. Next case, I believe, is U.S.C. Brown.
judges: Fletcher B. , Reinhardt, Wardlaw